# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **COMMUNITY BANC MORTGAGE CORPORATION, an Illinois Corporation,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 15-3051 |
| **NORTH SALEM STATE BANK, an Indiana banking corporation,** | ) ) ) | |
| **Defendant.** | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Defendant North Salem State Bank's Motion for Summary Judgment and request for oral argument (d/e 40) and Plaintiff Community Banc Mortgage Corporation's Motion for Summary Judgment (d/e 42).  Plaintiff's Motion is GRANTED, and Defendant's Motion is DENIED. Defendant's request for oral argument is DENIED.

Defendant breached its duty to indemnify Plaintiff when Plaintiff suffered a loss due to Defendant's failure to perform its

obligations under the parties' agreement. Moreover, Plaintiff's action is not barred by either <u>laches</u> or waiver.

## I. JURISDICTION

This Court has subject matter jurisdiction based on the diversity of the parties and because the amount in controversy exceeds $75,000. <u>See</u> 28 U.S.C. § 1332(a)(1). Venue is proper in this district because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district. 28 U.S.C. § 1391(b)(2) (venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"); 28 U.S.C. § 1441(a) (providing that a state court action may be removed to the district court "for the district and division embracing the place where such action is pending").

## II. FACTS

The Court takes the following facts from the parties' Statement of Undisputed Facts and other materials in the record. <u>See</u> Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

## A. Plaintiff and Defendant are Parties to a Secondary Mortgage Market Agreement

Plaintiff is an Illinois corporation engaged in the business of purchasing and servicing residential mortgage loans. Defendant is an Indiana banking corporation engaged in the business of providing retail banking services, including the origination of residential mortgage loans. Plaintiff and Defendant were parties to a Secondary Mortgage Market Agreement dated May 21, 1996, as amended by the Amendment to Secondary Mortgage Market Agreement dated effective November 1, 1996 (collectively, the Agreement). Defendant is referred to as "Third Party Lender" in the Agreement.

After entering into the Agreement, Defendant originated residential mortgage loans and sold the loans to Plaintiff pursuant to the Agreement. Plaintiff then sold the loans to the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), and other secondary mortgage market participants. Under the Agreement, Defendant was a Level II Lender.

The Agreement provided that eligible mortgage loans purchased by Plaintiff would be "10 to 30-year fixed, ARM and Balloon reset, 1-4 family, first lien, owner-occupied mortgages." In addition, Defendant made a number of warranties to Plaintiff, including the following:

1. Mortgage loans are processed in compliance with all applicable Federal, State, and Local laws, and all FDIC, OCC, OTS, or Federal Reserve regulations applicable to real estate lending;

2. Mortgage loans are processed, packaged, and closed in accordance with Secondary Market guidelines;

3. Mortgage loans are originated, processed, and closed by Third Party Lender, or their authorized representative. Third Party Lender is responsible for actions of authorized representatives as if Third Party Lender had processed or closed the loan;

4. All documents and representations are true and correct.

The Agreement also provided remedies for certain violations of the Agreement. Plaintiff reserved the right to terminate Third Party Lenders for "specifically, but not limited to" several reasons, including deviating from processing loans under specific guidelines; noncompliance with rules, laws, or regulations governing lending; imprudent lending practices; failure to deliver

loans under mandatory commitments; or failure to meet deadlines. In addition, the Agreement provided that, if the "Third Party Lender does not deliver all required documents as required, without an approved extension of time by [Plaintiff], Third Party Lender shall, at [Plaintiff's] option, be required to repurchase the loan."

The Agreement also contained a checklist identifying each parties' responsibilities. Plaintiff reviewed title policy documents. Defendant closed and funded the loans, obtained releases, recorded the mortgages, recorded assignments, and returned all documents to Plaintiff. Plaintiff then verified that all documents were complete and correct per Freddie Mac requirements. The parties dispute whether the Agreement required Defendant to record the releases.

The Agreement also required the parties to indemnify each other. Defendant agreed to indemnify and hold Plaintiff harmless as follows:

> Third Party Lender fully indemnifies and agrees to hold [Plaintiff], its successors and assigns, harmless from and against any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorney's fees) of every nature and character that may arise or be made against or incurred by [Plaintiff] as a result of the Third Party Lender's failure

to perform its obligations, breach any warranties, or misrepresent any certifications in connection with this agreement.

## B. Defendant Originates the Wainman Loan and Sells the Loan to Plaintiff

The dispute between the parties arises out of a mortgage loan originated by Defendant and sold to Plaintiff under the Agreement. Specifically, on September 4, 2003, Defendant originated a mortgage loan (the Wainman Loan) made to Stephen A. Wainman Jr., and Susan Wainman in the original principal amount of $100,000 to be secured by a first mortgage on property owned by the Wainmans located at 624 East Walnut Street, Greencastle, Indiana (the Property).

Prior to the closing of the Wainman Loan, the Property was encumbered by various pre-existing liens, including a first mortgage (First Mortgage) in favor of National City Bank of Indiana (National City) and a mortgage in favor of National City securing a line of credit (the Line of Credit Mortgage). The Line of Credit Mortgage was recorded on July 22, 1998.

On September 4, 2003, the Wainmans executed a "Request to Cancel Line of Credit and Affidavit of Balance" (Request to Cancel)

directed toward National City.  The Wainmans requested that the open line of credit be closed and a Release of Mortgage be recorded.  Abstract & Title of Putnam County, Inc., the entity that served as the escrowee and closing agent for the Wainman Loan, tendered the Request to Cancel to National City on September 9, 2003.[1]

Abstract & Title tendered a check to National City in the amount of $11,826.80 for the Line of Credit Mortgage.  The memo line of the Abstract & Title check to National City contained the words, "PAYOFF."  In addition, the September 4, 2003 Settlement Statement showed that the Line of Credit Mortgage was paid in the amount of $11,826.80.

On either September 4 or September 9, 2003, Defendant assigned the Wainman Loan to Plaintiff.[2]  On September 9, 2003,

---

[1] Plaintiff disputes this fact on the basis that the support for this statement, the declaration of Ben Comer, does not lay any foundation for his knowledge. The Court disagrees.  Comer is the President of Abstract & Title.  Comer Declaration ¶ 3.  Comer indicated that he was familiar with the records regarding the Wainman Loan, and that one of Abstract & Title's responsibilities was to tender the Request to Cancel to National City Bank.  Id. ¶ 4.  Plaintiff provides no evidence suggesting that the Request to Cancel was not tendered on September 9, 2003.  Therefore, the fact is undisputed.

[2] The exact date of the assignment is unclear.  The parties appear to agree to two dates—September 4 and September 9, 2003.  See Pl. Statement of Undisputed Fact No. 11, Def. Statement of Undisputed Fact No. 10.  The

Plaintiff obtained a title policy with Lawyers Title Insurance Corporation, which insured the Wainman Mortgage in the first-lien position.

On September 15, 2003, Plaintiff sold the Wainman Loan to Fannie Mae. Plaintiff retained the rights and obligations related to servicing the Wainman Loan.

## C. The Wainmans File for Bankruptcy

On July 10, 2007, the Wainmans filed for bankruptcy protection in the Southern District of Indiana, Case Number 07-bd-80794. Plaintiff received notice of the Bankruptcy Case.

United Community Bank and National City were listed as secured creditors in the Bankruptcy Case. Plaintiff asserts that United Community Bank is Plaintiff's parent company.[3]

---

Assignment itself reflects that the mortgage was recorded on September 9, 2003 and reflects that the assignment was executed September 4, 2003. Def. Ex. 9 (d/e 40-2). This dispute is immaterial.

[3] Defendant disputes this fact without citation. Therefore, the Court accepts the fact as true. See CDIL-LR 7.1(D)(2)(b)(2), (b)(6) (providing that each claim of disputed fact must be supported by evidentiary documentations and the failure to respond to any numbered fact will be deemed an admission of the fact)' see also Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Schedule D to the bankruptcy petition showed that the National City Mortgage—a home equity line of credit in the amount of $12,700—was opened in July of 1998 and "Last Active" on August 18, 2005. The parties appear to agree that this shows that the Wainmans continued to draw on the National City Line of Credit Mortgage even after Abstract & Title tendered the payoff amount and Request to Cancel to National City.

The parties agree that, on November 10, 2007, the Wainmans filed a Reaffirmation Agreement agreeing to repay the First Mortgage. However, Defendant's Exhibit 13, which is attached in support of this statement of fact, is a Reaffirmation Agreement with National City for the debt totaling $12,771.85.

**D.     United Community Bank Files Foreclosure Action**

Ultimately, the Wainmans defaulted on the Wainman Loan. Sometime before March 5, 2010, Plaintiff transferred the note for the Wainman Loan to United Community Bank so that United Community Bank could foreclose on the mortgage.

On March 5, 2010, United Community Bank filed a foreclosure complaint against the Wainmans. United Community Bank alleged it was the holder of and had an ownership interest in

the note prior to filing the foreclosure.[4]  On March 29, 2010, Plaintiff assigned all of its rights in the mortgage to United Community Bank.

During the foreclosure case, United Community Bank discovered that the Line of Credit Mortgage had not been released and that PNC Bank, N.A. (PNC), National City's successor, claimed the first mortgage position on the Property securing an indebtedness of $11,986.75 plus interest, fees, and costs for sums advanced to the Wainmans.  In October 2010, United Community Bank's foreclosure lawyer sent an email to Craig Fricke of United Community Bank stating the following:

> The sale had to be cancelled on this matter.  We were granted a Default Judgment in error by the court as one of the lienholders (PNC Bank) had answered.  We didn't learn of this until later.  In their answer, the lienholder claims their interest is superior.  We have and are continuing to attempt to show the lienholder that they are actually second, but they refused, at least at this time, to sign an agreed entry allowing us to take the property to sale tomorrow.  As a result, we had to remove the sale.  We are attempting to get opposing counsel to see reason for the next brief period of time (we'll probably give it about a week to communicate and

---

[4] Plaintiff lists this fact as "disputed" and "immaterial" but then states that the fact is undisputed and immaterial.  See Pl. Resp. at 7 (d/e 45) (pertaining to Defendant's Undisputed Fact No. 20).  Plaintiff provides no citation for any assertion that the fact is disputed.  Therefore, the Court accepts the fact as true.  See Footnote 3.

reason with them), but will have to file a title claim if they will not agree to a 2nd lien position.  Attached is a copy of their Answer.  Please provide our office authorization to file a title claim on your behalf should we be unable to get PNC to agree to their proper position.  Thanks.

**E.   Fannie Mae Requests That Plaintiff Repurchase the Wainman Loan**

In November 2011, Monica Spurling, then Vice President of Loss Mitigation for Plaintiff, informed Fannie Mae of PNC's claim of a first lien.  See Def. Ex. 15 (d/e 40-3) (identifying Spurling as the Vice President of Loss Mitigation for Plaintiff).  On November 29, 2011, Spurling sent an email to Tracy West[5] with the subject line, "A likely re-purchase from FNMA due to a long term pending title claim."  The email provided:

> We have notified FNMA as we are required to do on an unresolved title claim.  It appears the insurance will cover the claim (see attached) it can just be very time consuming and has been.  This claim and length of claim could not be avoided by UCB, but usually requires a repurchase by the servicers.  Our service representative suggests a voluntary repurchase as it has already been presented to FNMA but they have not ruled on it.

---

[5] The record is unclear whether West worked for Plaintiff or United Community Bank.  See Def. Fact No. 20 (identifying West as the Vice President of United Community Bank); Pl. Ex. B-3 (identifying West as the "SVP" for Plaintiff).  Any dispute in this regard is immaterial.

On November 30, 2011, United Community Bank's foreclosure counsel sent an email to Spurling indicating that the documents needed to demonstrate equitable subrogation were not included in the documents provided by "the Bank" and that an additional request had been made for the documents.

On January 18, 2012, Fannie Mae tendered notice to Plaintiff requesting Plaintiff repurchase the loan. The Notice asserted that Plaintiff violated Fannie Mae's 2002 Selling Guide Part V: Mortgage and Property Insurance Chapter 2: Title Insurance Section 204: Title Exceptions. The Notice stated that title to the Property must be free and clear of liens and encumbrances. The Notice contained the following findings:

> **Title Defect:** It has come to our attention per the foreclosure attorney Doyle Legal Corp that an outstanding title issue is preventing the subject property from going to foreclosure sale. An existing title claim was filed against the title company and the foreclosure is essentially on hold until the title claim is resolved. There is a priority assertion of PNC on the mortgage originated on 07/03/1998 and recorded 07/22/1998 in the amount of $13,300.00. The title claim hold has been effective since December 7, 2010. Since the procedures in the Selling Guide have not been followed, the subject property should be repurchased.

The Notice also identified the purported violation:

**Guideline Violation(s): 2002 Selling Guide Part V: Mortgage and Property Insurance (06/30/02) Chapter 2: Title Insurance (12/04/98) Section 204: Title Exceptions (06/30/02)** The title to the property that secures the mortgage must be good and merchantable and free and clear of all liens and encumbrances (except for the outstanding first mortgage lien, if we are purchasing or securitizing a second mortgage). We will not purchase or securitize a mortgage that has an unacceptable title impediment.

The regulation cited by Fannie Mae in the Notice also contains the following language (although this language was not included in the Notice):

We may accept other minor impediments to title if the lender warrants that they do not materially affect the marketability of the property and agrees to indemnify us if we should later incur a loss that can be directly attributed to the impediment(s). . . .

On or about April 20, 2012, Plaintiff complied with Fannie Mae's request and repurchased the Wainman Loan at a cost of $110,002.02.[6]

## F. Mortgage Foreclosure Action is Completed

---

[6] Defendant admitted that Plaintiff repurchased the Wainman Loan but asserts the fact is immaterial. <u>See</u> Def. Resp. at 5 (d/e 47) (stating that Plaintiff's undisputed fact No. 20 was undisputed and immaterial). The Court notes, however, that Defendant's Statement of Undisputed Facts asserted that <u>United Community Bank</u> repurchased the Wainman Loan from Fannie Mae, a fact Plaintiff disputed.

On May 22, 2012, counsel for PNC informed counsel for United Community Bank that PNC would enter a stipulation of lien priority indicating that the Wainman Loan was in first position. Also on May 22, 2012, West sent an email to Spurling providing as follows:

> I think they are missing the mission here. We have booked the loss we want taken out of the loan amount plus attorney fees. Had the title company done their job Fannie could not put the property back on us. Who knows what the house will sell for but the exposure shifted from Fannie to us do [sic] to the title company. We would be happy to turn the property over to them once paid. Yes still forward all to Rick at Brown Hay.

On June 7, 2012, United Community Bank and PNC stipulated that the mortgage held by United Community Bank was a first and prior mortgage lien against the Property senior to any interest of PNC. On August 1, 2012, an Amended In Rem Default Judgment was entered in the foreclosure case. On March 6, 2013, a sheriff's sale was conducted. United Community Bank bought the Property for $56,000.

United Community Bank thereafter sold the property for a net sale price of $14,712.37. United Community Bank remitted the

$14,712.37 to Plaintiff, thereby reducing Plaintiff's loss to $95,289.65.

## G.    Plaintiff Demands Defendant Indemnify Plaintiff

On October 1, 2014, over four years after the foreclosure was filed, the law firm of Brown, Hay & Stephens, LLP tendered correspondence to Defendant demanding that Defendant indemnify Plaintiff for the loss Plaintiff suffered on account of Defendant's breach of its warranties and obligations under the Agreement.  The Brown, Hay correspondence admits that Abstract & Title tendered funds and a request that the Line of Credit Mortgage be terminated and the mortgage released.  The Brown, Hay correspondence was the first time either Plaintiff or United Community Bank informed Defendant that there was an alleged defect with the Wainman Loan and/or the Property's title.

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. <u>Brewer v. Bd. of Trs. of the Univ. of Ill.</u>, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. <u>Blasius v. Angel Auto., Inc.</u>, 839 F.3d 639, 644 (7th Cir. 2016).

In this case, the parties filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Therefore, this Court must view all facts and draw all reasonable inferences in the light most favorable to the Plaintiff when reviewing Defendant's Motion and in the light most favorable to the Defendant when reviewing Plaintiff's Motion. <u>See Gazarkiewicz v. Town of Kingsford Heights, Ind.</u>, 359 F.3d 933, 939 (7th Cir. 2004).

## IV. ANALYSIS

Plaintiff argues that no genuine issues of material fact exist as to Plaintiff's claim for indemnification from Defendant.

Defendant argues that summary judgment is warranted in Defendant's favor for five reasons: (1) Defendant did not breach the Agreement because there was no title defect; (2) even if there were a title defect, the defect was minor and did not violate the Fannie Mae regulation; (3) the Agreement did not require Defendant to record the release, so Defendant did not breach the Agreement; (4) Plaintiff's action is barred by the doctrine of <u>laches</u>; and (5) Plaintiff waived its rights to pursue Defendant under the Agreement.

The Agreement between the parties required that Defendant fully indemnify and hold Plaintiff

> harmless from and against any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorney's fees) of every nature and character that may arise or be made against or incurred by [Plaintiff] as a result of [Defendant's] failure to perform its obligations, breach any warranties, or misrepresent any certifications in connection with this agreement.

The parties agree that Illinois law governs the Agreement. To establish a breach of contract, Plaintiff must prove (1) the existence of a valid and enforceable contract; (2) performance by Plaintiff; (3) breach of contract by Defendant; and (4) resultant

injury to the Plaintiff.  Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville, 61 N.E.3d 1155 (Ill. App. Ct. 2016). The parties only appear to dispute whether Defendant breached its contractual duty to indemnify Plaintiff.

Whether Defendant breached its contractual duty to indemnify requires that Plaintiff prove: (1) that the repurchase of the Wainman Loan from Fannie Mae is encompassed within the language of the indemnification provision requiring that Defendant indemnify Plaintiff for "any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorney's fees) of every nature and character"; and (2) that the loss on the repurchase of the Wainman Loan from Fannie Mae arose, was made against it, or was incurred by Plaintiff as a result of Defendant's "failure to perform its obligations, breach any warranties, or misrepresent any certifications" in the Agreement between the parties.

"In Illinois, an indemnity provision is interpreted in the same manner as any other contractual term" in that "the intention of the parties controls."  Jackson Nat. Life Ins. Co. v. Gofen & Glossberg, Inc., 882 F. Supp. 713, 722 (N.D. Ill. 1995); see also Hobbs v.

Hartford Ins. Co. of the Midwest, 823 N.E.2d 561, 564 (Ill. 2005) (providing that the primary objective for interpreting contracts is to ascertain and give effect to the parties' intention as expressed in their contract).  The contract is construed as a whole.  Smith v. Clark Equip. Co., 483 N.E.2d 1006, 1010 (Ill. App. Ct. 1985).

If the words used in the contract are unambiguous, the court must give the words their plain and ordinary meaning and apply the contract as written, unless it violates public policy.  Thompson v. Gordon, 948 N.E.2d 39, 47 (Ill. 2011); Rich v. Principal Life Ins. Co., 875 N.E.2d 1082, 1090 (Ill. 2007).  If, however, the words in a contract are reasonably susceptible to more than one meaning, the words are ambiguous and will be strictly construed against the drafter.  Rich, 875 N.E.2d at 1090.  A contract is not ambiguous, however, solely because the parties disagree on its meaning.  Central Ill. Light Co. v. Home Ins. Co., 821 N.E.2d 206, 214 (Ill. 2004).  In addition, indemnity provisions are strictly construed against the indemnitee.  Jackson Nat'l, 882 F. Supp. At 722.

## A. The Repurchase of the Wainman Loan Constituted a Loss, Claim, Demand, Action, Suit, Damage, Cost or Expense

The first issue is whether Plaintiff's repurchase of the Wainman Loan from Fannie Mae is encompassed within the language of the indemnification provision requiring that Defendant indemnify Plaintiff for "any and all losses, claims, demands, actions, suits, damages, costs, and expenses (including reasonable attorney's fees) of every nature and character." The undisputed facts show that it is.

In January 2012, Fannie Mae sent Plaintiff a Notice requesting that Plaintiff repurchase the Wainman Loan. In April 2012, Plaintiff repurchased the loan from Fannie Mae for $110,002.02. Under the plain language of the indemnity provision, Plaintiff suffered a loss.

Defendant argues, however, that Plaintiff's loss does not fall within the losses for which Defendant must indemnify Plaintiff. Defendant first asserts that Fannie Mae did not demand that Plaintiff repurchase the loan but that Fannie Mae's correspondence was "a mere notice." However, Fannie Mae clearly requested that Plaintiff repurchase the Wainman Loan, which constituted a claim,

if not an outright demand, that Plaintiff complied with by repurchasing the Loan.

Defendant also argues that Plaintiff voluntarily repurchased the Wainman Loan and that Defendant is not responsible for indemnifying Plaintiff for Plaintiff's voluntary decisions. Specifically, Defendant argues that there was no title defect because the Line of Credit Mortgage was released by operation of law or by the doctrine of equitable subrogation. See <u>U.S. Bank Nat'l Ass'n v. Seeley</u>, 953 N.E.2d 486, 489 (Ind. App. Ct. 2011) (holding that, where evidence shows the parties intended the payoff of a line of credit mortgage to terminate the mortgage, the line of credit mortgage is deemed terminated); <u>Fin. Ctr. Fed. Credit Union v. Brand</u>, 967 N.E.2d 1080, 1084 (Ind. App. Ct. 2012) (discussing equitable subrogation and noting that a refinancing lender who provides the funds to pay off an existing mortgage stands in the shoes of the senior lien and retains its priority status so long as the refinancing lender is not culpably negligent). Defendant claims that Plaintiff would not have had to repurchase the Wainman Loan if Plaintiff had just explained to Fannie Mae that there was no title defect or that the title defect was minor.

Defendant presents no evidence suggesting that Fannie Mae would not have requested repurchase of the Wainman Loan had Plaintiff explained that there was no title defect or that the title defect was minor.  A party cannot defeat a motion for summary judgment with conclusory allegations or speculation.  <u>Heft v. Moore</u>, 351 F.3d 278, 283 (7th Cir. 2003); <u>Borcky v. Maytag Corp.</u>, 248 F.3d 691, 695 (7th Cir. 2001) (speculation is insufficient to defeat summary judgment).  In fact, the only evidence in the record suggest that Fannie Mae did not find the defect was minor, as evidenced by Fannie Mae's Notice.

Therefore, the Court finds that Plaintiff's repurchase of the Wainman Loan constituted a "loss" as that term is used in the indemnity provision.

**B.    Plaintiff's Loss Arose, Was Made Against, or Was Incurred as a Result of Defendant's Failure to Perform its Obligations, Breach Any Warranties, or Misrepresent Any Certifications**

The more difficult question is whether Plaintiff's loss arose or was incurred as a result of Defendant's failure to perform its obligations, its breach of any warranties, or its misrepresentation

of any certifications.  The Court finds that the undisputed facts answer this question in the affirmative.

The Agreement defined eligible mortgage loans to be purchased by Plaintiff as "10 to 30-year fixed, ARM and Balloon reset, 1-4 family, first lien, owner-occupied, mortgages."  Therefore, Defendant was responsible for providing Plaintiff with first-lien mortgages.  Defendant also warranted that the mortgage loans would be processed in compliance with all applicable laws and processed, packaged, and closed in accordance with Secondary Market Guidelines.  Finally, Defendant agreed it was responsible for obtaining all releases.

Defendant did not fulfill its obligations, and the Wainman Loan did not meet these requirements.  The relevant Fannie Mae regulations provided that the title to the property securing the mortgage must be free and clear of all liens and encumbrances, other than the first mortgage lien.  Title to the Property securing the Wainman Loan was not free and clear of all liens and encumbrances.  Defendant did not obtain a release of the Line of Credit Mortgage to the extent it still appeared as an encumbrance on the Property.

Defendant argues that the Agreement did not specifically require that Defendant record any releases.  Even if true, the fact remains that Defendant did not obtain a release of the mortgage such that title to the Property was free of all liens and encumbrances.

Defendant also argues that it did, in fact, provide a first-lien mortgage by operation of Indiana law and equitable subrogation. Defendant asserts, and Plaintiff does not dispute, that Indiana law governs the rights and obligations of the parties related to the Property, title, and title defect for the Property.

Defendant cites <u>Seeley</u>, 953 N.E.2d at 489, which holds that, where the evidence shows the parties intended the payoff of a line of credit mortgage to terminate the mortgage, the line of credit mortgage is deemed terminated.  Defendant contends that such evidence is present here, where the Wainmans requested in writing that National City terminate the Line of Credit Mortgage and the mortgage was paid in full.  Defendant also cites to the doctrine of equitable subrogation, which holds that a refinancing lender who provides the funds to pay off an existing mortgage stands in the shoes of the senior lien and retains its priority status so long as

the refinancing lender is not culpably negligent.  See Brand, 967

N.E.2d at 1084; Bank of N.Y. v. Nally, 820 N.E.2d 644, 653 (Ind.

App. Ct. 2005),

Yet, even if these doctrines applied, the fact remains that,

when Defendant sold the Wainman Loan to Plaintiff, Defendant did

not provide title to the Property that was free and clear of

encumbrances.  See, e.g., Wells Fargo Bank, N.A. v. Bank of Am.,

N.A., No. 11 Civ. 4062 (JPO), 2013 WL 372149, at *8 (S.D. N.Y.

Jan. 31, 2013) (finding that the potential right to subrogation did

not demonstrate that the defendant did not breach the provision in

the agreement to provide a first prior lien free and clear of any

liens, claims or encumbrances or the warranty that plaintiff had

the ability to foreclose on the property and realize the benefits of a

party with a first lien).  During the mortgage foreclosure

proceedings, United Community Bank had to litigate the issues of

PNC's mortgage lien, which delayed the mortgage foreclosure for a

significant period of time.  Because Defendant did not ensure that

the release from National City was obtained—whether by recording

the mortgage, preparing a release document for recording, or

ensuring that a release was recorded—an encumbrance remained

on the title.  Clearly, the intent of the parties in their Agreement was to, in part, avoid issues pertaining to title and require indemnification when such issues did arise.  Therefore, regardless of whether equitable subrogation would apply or whether the facts are such that a court would find that the Line of Credit Mortgage terminated by operation of law, Defendant was already in breach when it sold a loan to Plaintiff that was secured by property encumbered by the Line of Credit Mortgage.

Defendant next asserts that, even if a title defect existed, the defect was minor and did not violate the Fannie Mae Regulation. Defendant argues that Fannie May recognizes that some conditions are minor impediments to the title that do not affect the marketability of the property.

However, Defendant's argument is belied by the undisputed fact that Fannie Mae did not see the defect as minor.  On January 18, 2012, Fannie Mae sent Plaintiff a Notice requesting that Plaintiff repurchase the loan.  The Notice reflects that an outstanding title issue prevented the subject property from going to foreclosure sale.  Because the procedures in the Selling Guide

were not followed, "the subject property should be repurchased." Fannie Mae did not view the defect as minor.

In opposition to Plaintiff's motion for summary judgment, Defendant also asserts that Plaintiff's loss is attributable to Plaintiff's failure to act diligently. Defendant argues that if Plaintiff had completed the foreclosure action or resolved the title dispute within a reasonable time, Fannie Mae would not have requested that Plaintiff repurchase the Wainman Loan. Defendant also argues that had Plaintiff timely informed Defendant of the loss, Defendant could have resolved the alleged title issue or simply paid PNC what it requested on its mortgage lien.

However, Defendant cites no factual support for its assertion. As noted above, a party cannot defeat a motion for summary judgment with conclusory allegations or speculation. <u>Heft</u>, 351 F.3d at 283; <u>Borcky</u>, 248 F.3d at 695 (speculation is insufficient to defeat summary judgment). Because the undisputed facts show that Plaintiff suffered a loss as a result of Defendant's failure to perform its obligations under the Agreement, Plaintiff is entitled to summary judgment unless Defendant's affirmative defenses of <u>laches</u> or waiver bar Plaintiff's claim.

## C.     Plaintiff's Claim is Not Barred by <u>Laches</u>

Defendant argues that Plaintiff's claim for indemnification is barred by <u>laches</u>.

<u>Laches</u> bars an action where unreasonable delay in bringing suit causes prejudice to the opposing party.  <u>Madigan v. Yballe</u>, 920 N.E.2d 1112, 1122–23 (Ill. App. Ct. 2009).  Although not raised by Plaintiff, the Court notes that <u>laches</u> has generally applied to actions in equity while statutes of limitation have applied to actions at law.  <u>Sundance Homes, Inc. v. Cnty. of Du Page</u>, 746 N.E.2d 254, 263 (2001).  Although Illinois no longer mechanically applies <u>laches</u> only to equitable actions, Illinois courts and the Seventh Circuit, applying Illinois law, have not extended <u>laches</u> to a breach of contract claim seeking only money damages.  <u>See</u> <u>West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.</u> 794 F.3d 666, 678 (7th Cir. 2015) ("[W]e have yet to find a case in which an Illinois court has applied laches to bar a breach-of-contract suit seeking only monetary damages."); <u>Gen. Auto Serv. Station, LLC v. Garrett</u>, 50 N.E.3d 1114, 1148 (Ill. App. Ct. 2016 ("No court has applied <u>laches</u> to a breach of contract action between private parties where the relief sought was limited

to money damages."). Instead, Illinois courts have only extended laches to actions at law where the relief sought was quasi-equitable or where civil servants seek backpay. See Nature Conservancy v. Wilder Corp. of Del., 656 F.3d 646, 650-51 (7th Cir. 2011).

Because Plaintiff brings a breach-of-contract action seeking solely money damages, laches does not apply, and the cause of action is governed solely by the statute of limitations. This Court previously found that Plaintiff brought its cause of action within the statute of limitations. See Opinion (d/e 14).

Even if the doctrine of laches applied to this cause of action, Defendant has failed to meet its burden. To establish laches, Defendant must show a lack of due diligence by Plaintiff in asserting its claim against Defendant and prejudice to Defendant. See People v. McClure, 843 N.E.2d 308, 316 (Ill. 2006). In January 2012, Fannie Mae requested Plaintiff repurchase the Wainman Loan. Plaintiff repurchased the loan in April 2012, but did not learn the exact amount of its damages until the completion of the sale of the Property. See Settlement Statement dated January 17, 2014. Plaintiff filed this lawsuit on February 19, 2015 alleging

that Defendant breached its obligation to indemnify Plaintiff for the loss.

Even assuming these facts constituted unreasonable delay, Defendant has not shown prejudice due to the delay between April 2012, when Plaintiff repurchased the Wainman Loan, and February 19, 2015, when Plaintiff filed this lawsuit. Defendant argues that Plaintiff should have notified Defendant sooner of the alleged title defect, in which case Defendant could have paid the outstanding mortgage or warranted to Fannie Mae that the alleged impediment was minor and agree to indemnify Fannie Mae if it incurred a loss.

But <u>laches</u> bars recovery for a litigant whose unreasonable delay in bringing an action or asserting a right prejudices the opposing party. <u>See</u> <u>People v. Hawkins</u>, 690 N.E.2d 999, 1005 (Ill. 1998); <u>In re Marriage of Benson</u>, 33 N.E.3d 268, 276 (Ill. App. Ct. 2015). Plaintiff's "action" or "right" is one seeking indemnification for Plaintiff's repurchase of the Wainman Loan, which occurred in April 2012. Plaintiff is not bringing an action on Defendant's purported breach to perform its obligations under the Agreement that led to the alleged title defect. Therefore, Defendant's

argument that Plaintiff should have notified Defendant of the alleged title defect earlier is inapposite. The cause of action did not accrue any earlier than April 2012 when Plaintiff repurchased the Wainman Loan from Fannie Mae.

To demonstrate prejudice, Defendant must submit some evidence that Plaintiff's delay misled Defendant or that Defendant would have pursued a different course of action. Cannella v. Vill. of Bridgeview, 673 N.E.2d 394, 398 (Ill. App. Ct. 1996). Defendant has not presented any evidence of prejudice due to the delay between April 2012 and the filing of the lawsuit in February 2015. See id. ("Speculation that a party might have proceeded differently is insufficient to prove harm as a result of an opposing party's delay.") Therefore, laches does not apply. See Univ. Healthcare Consortium v. UnitedHealth Group, Inc., 68 F. Supp. 3d 917, 926 (N.D. Ill. 2014) (noting that while laches typically involves questions of fact, the court may resolve the issue on summary judgment where the facts are not genuinely disputed).

**D. Plaintiff Did Not Waive its Claim for Indemnification**

Lastly, Defendant argues that Plaintiff's actions are inconsistent with any intention other than waiving its rights to pursue Defendant under the Agreement.

Waiver is the intentional relinquishment of a known right. Ryder v. Bank of Hickory Hills, 585 N.E.2d 46, 49 (Ill. 1991). Under Illinois law, a waiver may be express or implied from a party's conduct. Id.

Implied waiver "must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed the waiver." Ryder, 585 N.E.2d at 49. Essentially, the issue is whether, based on the circumstances, the "person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." Ryder, 585 N.E.2d at 49 (internal quotation marks omitted). Inaction alone is insufficient. See Washburn v. Union Nat'l Bank & Trust Co. of Joliet, 502 N.E.2d 739, 742 (Ill. App. Ct. 1986) (finding that inaction by the bank did not constitute an implied waiver of its rights as a secured lender).

If the parties do not dispute the material facts alleged in support of the waiver claim and the facts support only one reasonable inference, the existence of waiver is a question of law. Anderson v. Holy See, 878 F. Supp. 2d 923, 933 (N.D. Ill. 2012), aff'd sub nom. Anderson v. Catholic Bishop of Chicago, 759 F.3d 645 (7th Cir. 2014) (citing Illinois cases). If there is a dispute regarding the material facts or if reasonable minds could differ as to the reasonable inferences to be drawn, then the issue of waiver is a question of fact. Id.

Defendant asserts that implied waiver applies here because Plaintiff's actions are inconsistent with any intention other than waiving its rights to pursue Defendant under the Agreement. Defendant first argues that Plaintiff could have required Defendant repurchase the Wainman Loan if Defendant did not tender the documents necessary to complete the sale of the loan to Plaintiff. By failing to do so, according to Defendant, Plaintiff waived its ability to recover from Defendant.

However, the Agreement did not require that Plaintiff demand that Defendant repurchase the loan. Paragraph D(8) of the Agreement provided as follows:

> In the event Third Party Lender does not deliver all
> required documents as required, without an approved
> extension of time by [Plaintiff], Third Party Lender shall,
> at [Plaintiff's option], be required to repurchase the loan.

Because repurchase of the loan was at Plaintiff's option, Plaintiff's decision not to request that Defendant repurchase the loan is still consistent with a decision to seek indemnification. See, e.g., Washburn, 502 N.E.2d at 742 (finding that inaction by the bank did not constitute an implied waiver of its rights as a secured lender).

Defendant also argues that Plaintiff's delay in seeking indemnification can only be interpreted as an intention of waiving Plaintiff's right to indemnification under the Agreement. The Court disagrees.

Waiver can be inferred from the delay in asserting a right. UIDC Mgmt., Inc. v. Sears, Roebuck & Co., 520 N.E.2d 1164, 1167 (Ill. App. Ct. 1994). For instance, when a contractual provision requires performance within a definite period time and a party acts inconsistently with that time provision, the provision may be considered waived. See id. (describing situation where waiver commonly occurs but finding that defendant allowing the plaintiff

to maintain the premises for nine years did not constitute conduct inconsistent with an intention to insist upon its right to maintain its property during the remaining 25 years of the contract). Here, however, Plaintiff had no obligation under the Agreement to notify Defendant of the alleged title defect within a particular period of time.

Moreover, Plaintiff did not repurchase the loan until April 2012 and did not determine the final amount of its loss until January 2014. <u>See</u> Settlement Statement (dated January 2014), Ex. B-6 (d/e 43-2). Plaintiff sought indemnification from Defendant in October 2014. The delay under the circumstances here does not constitute conduct inconsistent with an intention to seek indemnification. Therefore, because the relevant facts are not in dispute, the Court finds as a matter of law that Plaintiff did not waive enforcement of the indemnification provision.

## V. CONCLUSION

For the reasons stated, Defendant North Salem State Bank's Motion for Summary Judgment (d/e 40) is DENIED and Plaintiff Community Banc Mortgage Corporation's Motion for Summary Judgment (d/e 42) is GRANTED. The Clerk is DIRECTED to enter

judgment in favor of Plaintiff and against Defendant in the amount of $95,289.65 plus prejudgment interest at a rate of 5% per annum from the date of demand and costs of suit.  THIS CASE IS CLOSED.

**ENTER:  July 3, 2017**

**FOR THE COURT:**

<u>    s/Sue E. Myerscough</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**